and Mr. Lambert. We'll hear from you when you're ready. Thank you, your honor. May it please the court. The South Carolina General Assembly enacted a budget proviso that prohibits schools from using state funds to announce or enforce a mask mandate in public schools. Importantly, the proviso is not a ban on mask mandates themselves. Indeed, the South Carolina Supreme Court has expressly recognized that school districts may, consistent with the proviso, use federal or local funds to enact mask mandates. The Supreme Court of South Carolina sort of answered that for you. That's strange credulity, didn't it say that? They said that, your honor, in Wilson v. City of Columbia. You don't think that meant a thing for them to say that the fact that you don't provide state funding, who in the world believes it's going to work if you don't do that? Well, your honor, the Supreme Court of South Carolina does as well as school districts themselves. That line about credulity and not a penny of state funds in the Wilson case came in a specific paragraph discussing whether the City of Columbia's ordinance conflicted with the proviso. Columbia's ordinance specifically said that school administrators, principals, and teachers were obligated to enforce the city's ordinance and that those school officials would be fined $100 each for every infraction. That was specific to what Columbia did. It wasn't a comment as to the possibility of enacting these mandates with federal or local funds more generally. And we know that for at least several reasons. Most importantly is the fact that a month later in the Richland County School District 2 case, the South Carolina Supreme Court again said that it did not reject the possibility that a school district could enact these mandates with federal or local funds. For that statement and a short 5-6 page opinion in Richland 2 to mean anything, it must mean that it was possible. Otherwise, there was no reason for the state Supreme Court to have written that. So what's the impact of the Richmond case on the plaintiff's case here, the appellee's case? It means they lack standard, Your Honor, and there's no jurisdiction to review a state funding decision. Here, the district court thought that the proviso banned mass mandates. At page 292 of the joint appendix, it says as much. But the state Supreme Court has said that's not the case. The state thought so too below. Your Honor, that's correct. Oh, it's all over the country. Well, Your Honor, there was certainly confusion as to the scope of the proviso, admittedly so. But everything the appellees point to on that front predates the state Supreme Court's second decision in the Richland County School District 2 case. The statement from State Superintendent of Education Spearman, the statement from the Greenville County Schools, any of the briefings below all predated what the state Supreme Court has done the second time. Additionally, the litigation experience of this case and others shows that the proviso doesn't prohibit mass mandates. Charleston County Schools enacted a proviso, excuse me, enacted a mask mandate ban before the, let me rephrase that. Charleston County enacted a mask mandate in schools before the proviso was enjoined. In other words. Is that the county that the Attorney General sued or threatened to sue, or is that a different county? It's a different county. The Attorney General sued the city of Columbia for an ordinance that was different than what Charleston County Schools did. Additionally, Richland County School District 2. The Attorney General can enforce this thing. Sounds like to me he can do suing to ensure that it's done. I think that's correct, right? The Attorney General can certainly enforce state law, Your Honor. It's not clear that necessarily a lawsuit that would enforce the proviso would impact. That's what he was bringing a suit about. It wasn't just state law in general. It was about the proviso. It was, Judge Wynn. That's correct. Wasn't he trying to get that enforced? He was trying to ensure that the city of Columbia followed state law. Absolutely. Which is the proviso. Which is the proviso. Exactly. It took a while to get there, but we got there. We did, Your Honor. What Richland County told the state Supreme Court when they were litigating there was that we have $80 million in a segregated account. The funds that no one contends are subject to the proviso, which means that we can enact a mask mandate this way. Charles? Have they done that yet? Yes, Your Honor. My understanding is that they did. It may have lapsed by now, but they did at one point have that. Charleston County did that. Indeed, of the school districts in South Carolina that have had a mask mandate, 10 of them took that action before the proviso was enjoined. And the three that acted afterwards also acted after the South Carolina Supreme Court's opinion in the Richland 2 case. How many districts right now have masking orders? As of today, Your Honor, there may be a few. If there are any that left that have not repealed them at this point. These are temporal, I guess. It depends on the level of risk that the school perceives, I gather. Correct, Judge Niemeyer. And the school districts get to make that decision. And they've gotten to make that decision throughout the entire school year, and the proviso doesn't affect that authority. You're saying the proviso doesn't do anything. No, not exactly, Judge Wynn. The proviso ensures that school districts use federal or local funds to… When it comes to mask mandates, it doesn't do anything about mask mandates, does it? It does not. It does not prohibit school districts from enacting mask mandates. But the law doesn't require that. It only requires that the third parties will react in predictable ways. And it's satisfied if it's predictable in the instance. It doesn't have to actually be happening. There's nothing here that suggests it would even be a predictable result if the proviso were enjoined and mask mandates would be enacted. I got the word we're talking about. You know, it's easy to blur, and I might suggest that the press has blurred it to the extent we see any clips of that. But the proviso is merely do not spend state money on this function. Exactly, Judge Neal. And so to carry out the mandate, they simply don't have to spend state funds on that function. Correct. And inherently, it reveals the state policy that they don't think it's worthy to spend state money on masking. But it doesn't prohibit masking. Is that your understanding? That is exactly correct, Judge Niemeyer. And that presents two problems for the Appellee's case here. One goes to the state funding and the state policy question. This court in the Stanley case said it would be an unfathomable intrusion to determine the allocation of state resources. And it said in the Bacon case that states have near-plenary authority to allocate responsibility among their political subdivisions. Now, I guess eventually we'll get into more of the merits, but the policy aspect is just state funding. But you've got a state superintendent of education said that proviso prohibits mandates. She did say that in July, Judge Wynn. And she is someone who deals with schools and what goes on with the children there. It's interesting that the state of South Carolina takes a position, won't send state funds. This action has been brought by individuals who have disabilities under two sections, under dealing with the ADA, dealing with the Rehabilitation Act. The question is, does it discriminate against them? Do you have any questions that there is an increased risk to students who have certain disabilities? Do you dispute that? Your Honor, that there is some increased risk, we do not dispute. The record is not clear as to what that increased risk is. But the record is replete with instances of what the CDC says and others. Where is it in the record that says it's OK to send someone with a severe disability to school with, you know, and not have it, not allow the school to enact a mask mandate if they need to? Two responses to that, Judge Wynn. The CDC and the South Carolina Department of Health and Environmental Control provide multiple COVID mitigation measures other than masking. And the second would be that the proviso does not prohibit students from going to school with mask mandates being enacted if necessary. Because the proviso doesn't prohibit school districts from enacting a mask mandate if they believe that that is warranted. There's a burden on them. You're right. Your Honor, the burden at most is very, very minimal here. Fifty-five percent of public school funding in South Carolina comes from federal or local funds. And there is nothing in this record that indicates that any school district is incapable of enacting a mask mandate with federal or local funds. So who's responsible here? I think you argue here there's no enforceability by the governor, nothing by the attorney general. So South Carolina enacts a law that says kids who have disabilities with increased risk, we all agree to some extent, who are then exposed to this virus in the school system, you know, increased risk. What happens when they, when we, do we wait until we see 10, 15, 100 of them contracted and then there's illnesses? What happens then? There's nothing they can do. I take it because you have immunity to stay in South Carolina. You says none of these, none of those officials are responsible to their citizens with disabilities. Your Honor, several responses on that front. One, school districts have the authority and if federal law would require mask mandates, the responsibility to enact those mask mandates. The plaintiffs here or any student with a disability is perfectly free to bring a lawsuit under Title II under Section 504 and sue a school district and say it violates federal law for there not to be a mask mandate. How can the proviso absolve the state itself of its obligation to comply with the ADA? The state of South Carolina and its political subdivisions are required to comply with the ADA in Section 504, Your Honor. What South Carolina is free to do is to determine how it will allocate the responsibility to comply between itself and its political subdivisions. The question goes to how is it that a state law can allow discrimination against those with disabilities? Your Honor, this law does not discriminate against anyone. That's their allegations. Your Honor, this court… What is our review of the allegations? Your Honor, I think they're allegations in which context, Your Honor? In this particular case. What is our review of this case? Legal questions de novo for findings of fact for clear error. But this court in the Baird case said explicitly that a facially neutral law cannot discriminate on the basis of a disability. The proviso is facially neutral. It's not even a law mandating any conduct of any kind except the allocation of education funds. It relates to an education appropriation, and it says those particular funds may not be used for this function in the schools. That is mandating masking. That's exactly right. The overall responsibilities of the state under the Rehabilitation Act aren't affected, and they don't address that. That's correct, Your Honor. And their failure to fund masking is not a violation of the Rehabilitation Act. That's exactly right. The state has no obligation to be spending money on public schools. The Rehabilitation Act has actually sort of stood on its head in this case, too, because what the plaintiffs are seeking is they're seeking conduct be imposed on every student in the school in order to protect them, which is not discriminatory. It now affects every school student. That's precisely right, Judge Niemeyer. I think that's why the district court's example of wheelchair ramps under the ADA is just a misfit here. That's an action the public— My question is, we're sitting here telling the state that it can't allocate its education funds in a particular context. The state has lots of other funds also, but this is a funding program for the education department, and they're saying don't use these funds for mask mandates. That's exactly right, Judge Niemeyer. I think that's why— Can that not be done in any instance? Can it be done with regard to sex discrimination? Can it be done with regard to race? Can the state be restricted in terms of saying, well, we won't send any funds to any school that will admit African-American students? Is that permissible? That's state funds. Same example with the policy. It's state money. They can do with it. It's just a mandate. It's no mandate. Doesn't say you can't have them there. Just say we won't send you money. Judge Wendt, absolutely the state cannot do that in two responses. Can they do it with sex discrimination? We won't do it with women? Your Honor, they cannot. And why can they do it to people with disabilities? For two reasons that those hypotheticals are different than this case. One, those hypothetical provisos would discriminate on their face in a way that violates federal law. Second, under the practicalities of not providing 45 percent of school funding to schools that did those things, it would be impossible to run schools. Neither of those two things is true of the proviso. In this court's decision, in the Stanley case, the Sixth Circuit's decision, the Kelly case, the Fifth Circuit's decision, the Moore case, all of which are cited in our blue brief, make very, very clear that there is a difference between ordering a state to comply with federal law, which, of course, federal courts may do, and then telling a state how it must go about that compliance. South Carolina is at no point— You've got federal law. You have the ADA and the Rehabilitation Act saying you may not discriminate— Thank you, Judge. May not discriminate against those with disabilities. And those with disabilities are alleging here that I have an increased risk for a virus. It is dangerous to me and to those like me. I can die. I can have severe health problems. And yet you won't let my school have a mask mandate because you come under the veil of saying, I just won't give you any money. As a citizen of South Carolina, I'm not going to send you state money there. You can go get it from somewhere else. You can go to private industry. You can go to the federal government. Go get someone, the churches, anybody. But we're just not going to do it. And then a state superintendent says it on his face, and the evidence points to it, if South Carolina does not provide this funding, won't be in it. No school would undertake this obligation, except perhaps in instances where they actually have a lot of money. Isn't this kind of discriminatory against the poor districts that you're really talking about here? No, Judge. What child of a family that is wealthy are going to have to confront this? This is only dealing with those who are in a public school setting and those who do not have a choice in terms of where to send their children. But those with means and money won't ever face this situation, will they? Your Honor. Practically speaking. Practically speaking, the proviso does not prohibit mask mandates, and that is why the athlete's argument falls apart, because the state is not prohibiting mask mandates, and the state is therefore not discriminating against anyone. It doesn't prohibit it for those who can afford otherwise. I don't believe so, Your Honor. The proviso allows schools to enact mask mandates, and schools have 55 percent of their funding from federal and local sources, and there's no school district that anyone has pointed to in this case that has said it is unable to enact a mask mandate because of the proviso. Practically speaking. They're not asking you to enact a mask mandate. They're saying under Title II and Section 504 federal law that the federal law requires reasonable accommodations. That's where that little example, that ramp comes in where you want to see it has to be intentional conduct and it's textually not there. That word's not in the text. You know it's not. That's where if you had that, then why would you ever put a ramp up? Because, you know, you don't need it until someone actually falls or something like that happens. Your Honor, getting towards the merits, the reasonable accommodation requirement comes from the regulations. This court said as much in the National Federation for the Blind versus Lamone. The government admits that in its amicus brief at page 11, and under the logic of the Sandoval case, something that is created, an obligation created by the regulations is insufficient to create a private right of action. But even putting that issue, if I may finish my thought, Judge Niemeyer, I see my time has expired. Even putting that aside, the proviso does not prohibit mask mandates. Districts are free to enact them if they choose. And if the plaintiffs contend that they are going to suffer harm because there's not a mask mandate, the recourse, the redress they would get is from suing a school district and having it ordered under a mandatory injunction. Let me ask one last question. If South Carolina does not have the purpose of keeping this mandate from being imposed, what's the purpose of the statute? The purpose is, I guess, twofold, Your Honor. One is to express the General Assembly's preference for one policy over another, much like the Hyde Amendment does that for Congress in the context of— What is that policy? To give choice, parental choice on masking and to promote other COVID mitigation strategies other than universal masking. To prohibit mandates being enacted to the exclusion of parental choice. Is that what you're saying? No, sir, not at all, Your Honor. What is critical here is the fact that the proviso—the South Carolina Supreme Court has told us this. The South Carolina Supreme Court gets the final word on the meaning of state law. The proviso does not prohibit school districts from using federal or local funds to enact a mask mandate if they so choose. That's where the relief would be against the school districts for the plaintiffs if they think those are necessary. That same Supreme Court, you said the term of state law, it says it's strange credulity to think that you can operate without state funds and do this, right? Your Honor, it said that in the context of Columbia's ordinance. Same Supreme Court, though, is what you're talking about, right? Same Supreme Court, but in the context of a separate mask ordinance than what school districts could do. Thank you. Thank you, Your Honor. Mr. Friedman? May it please the Court, John Friedman, for the plaintiffs. This case is about a proviso that forced students with disabilities, that put them at risk of severe illness from COVID, to choose between risking their health and attending their schools. Proviso 1.108 violates federal anti-discrimination laws because it made it harder, if not impossible, for schools to adopt a modification deemed the most effective modification by public health authorities, including the South Carolina government. Is that still true after the Richmond case? It is true, and I will turn directly there. Can schools now impose mask mandates using federal and local funds, if they so choose? So, I want to talk about the federal funds point, and I want to talk about… Well, my question is, can schools in South Carolina impose mask mandates now using federal and local funds? It's illusory and unadministratable. On federal funds, the proviso says… Have any of them done it? There's no evidence in the record that any of them have used local or federal funds. Have any of them imposed mask mandates that are still in place? Yes, there are seven districts that have mask mandates still in place. And the Columbia that was sued by the Attorney General, who's one of the only two appellants now, right? Those are the only two appellants? That's correct. So, the Columbia School District that was sued by the Attorney General, is that one of the appellees? Are there parents in that school district that are appellees? I don't believe so, ma'am. The Richland districts, I believe the districts are in the Richland which have enacted mask mandates. So, City of Columbia, not specifically, but I believe it's the same geographic area, same schools. Go ahead. How many districts imposed mask mandates over the period, whether they are still doing it now? You said there are seven still doing it. How many total have… Just let me finish this question. How many total districts have imposed mask mandates despite the proviso? At peak, it was 10. Many of those were just enacted at the time the injunction came into effect. Four were enacted after the injunction. I think that establishes our standing redressability. The fact that there were districts that introduced mask mandates shows that the problem was redressable. The fact that districts that had enacted mask mandates, one of which had been sued… I'm not sure it shows it's redressable. It shows probably just the opposite. Because if we were to enjoin the funding provision, the proviso, it wouldn't affect what the schools are doing. The schools apparently have decided on their own whether to impose mask mandates, and they have, and some can still do. And so it seems to me that not the way to get at this is not to, maybe to sue the school district, which is responsible for whether the mask mandate is imposed or not. But the funding doesn't prohibit it. The funding provision says don't use state funds for the masking. The proviso actually says can't use funds that are appropriate or authorized pursuant to the statute. So it's not just state funds. Federal funds are authorized under the Act. We're not going to get into the argument as to whether that proviso regulates federal funds, are we? Well, I think… That was attached to an education funding appropriation. There was a limitation on that funding promotion. That distributes federal funds, sections 1.3, 1.13, 1.25, 1.82, 1.101, 1.104 of the Act at issue distribute federal funds. So it's not just… Those aren't state appropriated funds. But the statute isn't limited to state funds. It is limited to appropriated or authorized funds. It's important. The language is important. Now, in terms of the decisions… I think the focus of this whole consideration regarding whether it imposes a mask mandate is it sort of muddles the issue. The issue is, as I understand, your clients aren't asking them to impose a mask mandate on schools. They're only asking that a barrier be removed that would allow the schools to do so. That's a reasonable thing. No one's asking to counter it. No one's asking for a mandate for it. So whether you fund or not, they're not saying we want a mandate. We're saying do not bar the schools from providing us this relief that every court in the nation who's reviewed this, and I'm subject to be corrected if there is such a court, has said there's an increased risk of COVID in these situations where you don't have these kind of mask mandates. Every court that has done it. So to focus on whether, well, this doesn't require them to have a mandate, that's not the issue. And to cabin the Supreme Court of North Carolina, that's my state, of South Carolina, as saying that it strains credulity to think that if you don't provide funding to this, it won't affect the schools. I don't know how you cabin that. That's pretty much evident here, and it becomes evident from what is the purpose of this proviso? You can come up with all kinds of neat things to say, but at the end of the day, the purpose is just that, to prevent schools from enacting mandates. That's right, Your Honor. And I want to just turn back to one of Judge Thacker's earlier questions, which I think is directly related, which is what the South Carolina Supreme Court held as a practical matter. When the city of Columbia was sued by the defendant attorney general, South Carolina Supreme Court said any effort to enforce the proviso must be without any assistance from school personnel and without a penny of state funds. And how is a school supposed to do that? If you're a teacher sitting there in a classroom, and you're right there after lunch, and you have to remind somebody, a student, to put their mask back on, how are they supposed to account for, am I spending state money when I'm doing this? Am I spending non-appropriated or authorized funds? Let me understand what you just said. You said without any assistance from school personnel? That's what the South Carolina Supreme Court held in the city of Columbia case. So the net effect of this, not only we're talking funds, but those who are paid by the state of North Carolina, I keep saying North Carolina, my favorite state, but by South Carolina? The direct quote of school personnel, and I want to be clear, the defendant's position below, their defendant's position before their reply brief in this case was, this is the attorney general's position. This is at JA 110 to 111. Enforcement responsibilities will fall on state-funded personnel, which will necessarily, necessarily involve use of appropriated funds. The governor's position below, this is the governor's brief, ECF 58 at page 3, footnote 1. Practically speaking, virtually any enforcement or announcement of a mask mandate in a public school would require some use of state-appropriated funds. So their position up until the reply brief, consistent with what the South Carolina Supreme Court held, is that it's simply not possible. And when you've got a situation where- The South Carolina Supreme Court held in which case? In the- Columbia. In the Columbia case. Yeah, and I thought you were going to answer my question about the Richland case. Didn't that change the landscape? Not in our view, Your Honor. I think that the Richland case- Not at all. It said, we're not going to provide you guidance. We're going to say that we're not rejecting the possibility that funds not appropriated or authorized by the act may be used, but didn't provide any guidance on how that could be done. No, it's no guidance, but it certainly provides a scope. It says, we do not reject the possibility that funds not appropriated or authorized by that act, that's the Education Appropriations Act, may be used to announce or enforce a mask mandate. And it's a practical- And other places, they say, we're leaving that to others to decide, parents and the local school districts. And the whole point is that they construed this to be a limitation on appropriations under the particular Appropriations Act in K-12 public school. This says, this provisos attached to the intent of the legislative prohibit mask mandates funded by the 2021 and 2022 Appropriations Act in K-12 public schools. So that addresses specifically also the notion that it regulates federal funds. And this opinion states explicitly, you can use other funds to do that. So I have two responses to that, Your Honor. The first is the Richland 2 case is not any more administratable after that decision than it was before. We don't know the teacher salaries, the staff salaries are all funded in part by the state. That's what the position of the defendant and the Attorney General and the governor was below. That it would not be possible to segregate out. So if you're a teacher sitting there in a classroom, I want to know, can I remind somebody to wear their mask? Am I risking a lawsuit if I do this? So have the governor or the Attorney General taken any action against the school districts that have imposed mask mandates since Richland? Not since Richland. Okay. That's also after the injunction was issued. Right. So I want to ask you about the injunction. That's what we're here on, right? Your injunction. And what was it you wanted enjoined? We wanted enjoined, as Judge Wynn suggested earlier, Proviso 1.08. In your prayer for relief, what you wanted was to enjoin the defendants from violating the ADA, etc. By prohibiting school districts from requiring mask mandates for their students and staff. But now that doesn't seem to be what the South Carolina Supreme Court says it does. And Appellant's counsel said that the Proviso does not prohibit school districts from requiring masks for their students and staff. So you've got, it seems like, at least the way your complaint is currently written, what you sought to be enjoined has happened. So the timing is confusing because the injunction came down and then two days later the Richland decision came down. So they couldn't have enforced the statute consistent with the injunction. The Proviso consistent with the injunction. I see what you're saying. Which statute? Proviso 1.108. I'm unclear on what injunction you were seeking. Were you seeking to avoid the Proviso as part of the Appropriations Act? We were, I think Judge Thacker… Or I wanted to have you tell me what you sought to enjoin. We sought to enjoin, per our prayer for relief, the defendants from violating the ADA and the Rehabilitation Act. But these defendants are not responsible in those acts. The school boards would be. You didn't sue them. We did sue them. The local school boards? We did. They didn't appeal. That's right. The only two parties on appeal are the Governor and the Attorney General, correct? That's correct. How do you have standing against the Governor and the Attorney General? We have, and as to the Attorney General, the district court did issue an order on that pursuant to the Attorney General's motion to dismiss for lack of standing. The Attorney General, the basis was his enforcement of the statute prior to that point. And was that based on the legal opinion and the threat to sue and the ultimate suit against the Columbia School District? That's correct, as well as the legal opinion authorizing others to sue. The Governor, and I can give you the slides, the Governor, it's in our complaint setting forth his encouragement of the provision, his executive order substantially holding the provision beforehand, and then his encouragement of enforcement of the provision. So, with regard to the merits, I think on the question of whether there's a private right of action, we think this issue is resolved by a Supreme Court case in Barnes v. Gorman where Justice Scalia held that Title II and Section 504 are enforceable through private causes of action. It's resolved by this court's decision in Lamone, which held the same. We don't see much of a reason to get into statutory interpretation. It's clear from our brief we don't think much of their arguments. They essentially ignore Alexander v. Choate. They ignore inclusive communities. On the question of reasonable modification, and it might make sense, just because this gets confusing, to take a step back as to what the actual standards are for a reasonable modification. So, under the law, a public entity is required to make reasonable modifications to policies, practices, or procedures when necessary to ensure people with disabilities have equal access to their program services or activities. Once that need becomes apparent, either on its face or because a person with disability requests the reasonable modification, the burden of establishing reasonableness is not a heavy one. It's enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which basically do not clearly exceed its benefits. That's a quote from Lamone. It's also this court's holding in Halpern v. Wake. We met that here. Our proposed modification was masking. I believe the Supreme Court has held that Title VI of the Civil Rights Act does not apply to non-intentional discrimination. Why shouldn't we hold the same thing here with regard to Title II in Section 504? Well, with regard to Section 504, I believe the Supreme Court's case in Alexander v. Cho denied that argument, said that Title VI is distinguishable from the Rehab Act, and then the Rehab Act is considered persuasive guidance to be interpreted the same as Title II. Just turning to the burden shifting. So we put forward through our expert testimony that masks are the most effective modification here. That's the declaration of Dr. Saul, which is Joint Appendix 1695. And once we've done that, the burden shifts to the defendants who, and this is the quote from Halpern v. Lamone and from Halpern v. Wake Forest, the defendants bear the burden of proving that the request of modification would be a fundamental alteration to the program or it imposes an undue... But I'll tell you, it seems like to me most courts have kind of gone on that part of it, that there's increased risk. Even appellates to some extent have indicated there's increased risk. But you walked away from the standing argument. That whole business of the Henry and back and traceability and addressability, that's like a red light flashing up on this bench right now. And you can keep walking in that direction, and maybe my colleagues want you to, but I'm just saying it just seems to me that is kind of where the heart of this case looks like to me. It's hidden there. Sorry, Your Honor. I thought I had you convinced on standing, so let me take a step back. You're just arguing your case. I don't mean to shift the argument and make my colleagues feel differently about it, so I will offer them, you know, if they do. But I'm just saying it seems like to me that's the tough part of this case. I appreciate the feedback, so let me be clear. We had standing when we filed. We had standing when the PI was entered. We have standing now. How do you have standing now? We have standing now because districts, after the injunction came in place, issued mass mandates. Currently, the districts out there are protecting 10,000 children with disabilities who are in districts that have mass mandates. Our client, Disability Rights South Carolina, represents the interests of those children. We have injury, and, again, I would refer to – But they issued mass mandates. Isn't that what you wanted? Yes. But if the injunction is lifted, if the injunction goes away, the defendants – Nothing changes. I wouldn't assume that at all. I think that private litigants would go out and challenge – They still can make the decision. Private litigants can go out and challenge whether the districts are in compliance with Proviso 1.108. Are you spending a penny in the South Carolina Supreme Court's – What did I do? Are you using any personnel to enforce the provision, to communicate the provision? That's a different case. If the injunction goes away, we know when the city of Charleston tried this, the attorney general issued an opinion saying anybody can sue. The next day, they were sued. That suit was pending when the injunction came down. Would other litigants sue to try to say you're spending some money? The potential injury is the lawsuits? The potential injury to the districts is the lawsuit. The potential injury to our clients is that they're not going to have districts that can consider their request for modification. Are the districts your clients?  Are the districts appellees? No, ma'am. So what's the potential injury to the appellees in this case? That their request for modification in the absence of an injunction is not going to be considered under Proviso 1.108. All right. Thank you. Mr. Lambert? May it please the court, a few brief points in reply. Let me just start with clearing up some information about school districts in South Carolina. The state of South Carolina has 77 school districts. The appellees have identified only 13 that at any point have enacted a mass mandate. Ten of them, they admit, did so before the proviso was enjoined. And the three that did so afterwards also did so after the Richland 2 case. That presents redressability and traceability problems for their case at this point. Second, as it comes to the South Carolina Supreme Court, the appellees would ask this court to ignore or rewrite the South Carolina Supreme Court's holding in the Richland County School District 2 case. In that short opinion, the court said exactly as you quoted Judge Niemeyer, it did not reject the possibility that federal or local funds may be used. And we know that Charleston County, before the proviso was enjoined, did exactly that. We know that Richland 2 told the South Carolina Supreme Court it had $80 million it could use to enact a mandate without using state funds. And again, everything the appellees point to about… Is it predictable that's going to happen? Predictable that what's going to happen, Judge Webb? It's not predictable that if they do not allow for the state funds, that the schools in fact will, on their own, with other funds, enact mandates. Your Honor, that's not predictable, but it's also not predictable that with state funds, schools will do it. Only three school districts of 77 enacted mass mandates after the proviso was enjoined, and those are the ones that did it after the state Supreme Court told them… Your question on traceability is when the injury depends on the decision of a third party, it must show that it's likely to react in predictable ways. Not a question that it's not the reverse. The question is, is it predictable? Schools will not require mandates without state funding. And I mean, there's an answer that everybody in this room and every newspaper and everybody in the state of South Carolina knows, and then there's a legal answer that you're getting ready to give me right now. But the clear answer to that is if nobody enacted a mandate, you wouldn't have proviso here. Your Honor, I can't predict what the General Assembly would have done or would have not done in the face of what school districts are doing. But what we do know is that more than… I'm only saying it from the legal determination here. It's not a question of whether or not you do it or not. You don't count how many have done it, how many have not done it. You look at traceability. You're looking, is it likely to react in a predictable way? And you have politicians that have said straight up, if you enact any type of mandate, no funding. That's out there. And so when you have those kinds of… There's a reality check to keep. And again, there is the legal argument. There's a nice little comfortable way that says, oh, that doesn't apply at all. And we just enacted these because we want to protect the parents. But then there's the reality. The reality is you simply do not want mandates in the state of South Carolina at all. But the allegation here is not to prohibit mandates. They're not asking for mandates. They're saying take down a barrier. Remove this barrier that will allow the school district to do it. They're not asking for a mandate, from what I understand. Judge Niemeyer, may I reply briefly? Absolutely. Thank you. Three brief points, Your Honor. One, the statement from legislators you're referring to is the statement they point to of one legislator. There are 169 other members of the General Assembly. Second, even conceding the traceability… There's one legislator who said if anything goes, if you do it, then there'll be no funding. That's one legislator. There are 169 other votes in the General Assembly. Second, even conceding the traceability… It can be mighty powerful. I know one senator that can be mighty powerful in the United States. It can be pretty powerful stuff. Conceding traceability for purposes of this discussion, there's still a redressability problem. And that fundamentally comes from the fact that the decision to enact a mask mandate belongs to the school districts. It has always belonged to the school districts. And nothing about the proviso changes that. And third, I think it's important to keep sight of in terms of the relief sought and what they are asking for. And their declarations, their sworn statements at pages 216 to 230 of the Joint Appendix, all of the appellees said schools are safe only if everyone wears a mask. They want mask mandates, and the place to ask for those is from the school districts. Thank you. This is not the end of the case, is it? I mean, this is a preliminary part of our case. Is that correct? We're up here on a preliminary injunction, yes, Your Honor. So, at the end of the day, you will get your say on all of these things if we win. I'm not saying we will. I'm saying at the end of the day, this is not the end of this case. It's not. But enjoining a state law that is properly enacted and valid does a harm to the state through the process, and that's why this appeal is particularly important. All right. Thank you, Mr. Lambert. Thank you, Your Honor. As both of you probably know, it's the custom of this court since the 1930s to come down and shake hands in Greek Council. It's unique to the Fourth Circuit, and we're very proud of it. We have suspended it during the COVID pandemic, and we haven't yet lifted that. So, we are going to forego shaking hands with you, but we do greet you and welcome you and thank you for your arguments. You're in the gracious court, and we'll try to treat you that way. Thank you very much. We'll stand adjourned tomorrow morning.
judges: Paul V. Niemeyer, James Andrew Wynn, Stephanie D. Thacker